May it please the court, my name is Greg Wallace and I represent Randy Rhinehart in this Social Security Disability Appeal. Mr. Rhinehart is a 26-year-old man who suffers from an intellectual disorder or disability, something that we used to call mental retardation. He's been in special education classes throughout his career in school. He's never held a job for more than one day. Now the main issue in the case is whether substantial evidence supports the ALJ's finding that Rhinehart does not meet the requirements of Listing 1205B for intellectual disability. Now we have raised another issue that really flows from this particular issue, which I'm going to focus on today, and that is that the ALJ's RFC assessment, even if he doesn't meet Listing 1205B, the ALJ's RFC assessment did not properly include the limitations of Mr. Rhinehart's social functioning and concentration, persistence, or pace. Now under Listing 1205B, there are three requirements. You have to have an IQ of 70 or below. You have to have significant deficits in adaptive functioning in four specified areas. And the disorder has to have begun prior to age 22. Now the ALJ conceded the requirements. The most recent IQ score, which was in 2013, showed that Mr. Rhinehart has a full-scale IQ of 65. Although the ALJ never reached the third requirement, the evidence is plain that his disorder began before age 22. In fact, this IQ test was given when he was at age 21. He was in special education classes. The medical evidence, he's been assessed as suffering from mental retardation on several occasions prior to age 22. Can I ask you a preliminary question? I understand the argument on the listing, and I want to let you get back to it in a second. But preliminarily, if we think that there was no disability because there was substantial evidence, not using the listing, but just generally the claim, under Bagwell and some of the recent decisions, do we have to go back and then look at whether or not the ALJ erred in whether substantial evidence supports the listing determination made? In other words, have we sort of adopted a harmless error analysis that if it doesn't meet the disability at stage five or six, then we don't have to do the listing? No, because the Supreme Court has pointed out that the listing is separate. It is separate from the consideration of what the individual residual functional capacity is and whether given that residual functional capacity, a person can actually perform work that exists in significant numbers within the economy. The listing, the step three listing, is sort of self-contained, irrespective of what the end result might be. For example, you could find and craft a hypothetical where the V.E. would identify a significant number of jobs that exist that such a person could perform. Isn't the other half of the answer that you have an administrative law here, because the commissioner has created a presumption, if there's a listing? Yes. It's a presumptive disability under the listing. If the ALJ didn't apply the presumption, then the analysis is flawed. Exactly. Exactly, Your Honor. So that cases like Bagwell really only apply when the ALJ doesn't do the listing analysis, because I think that that's like in Bagwell, which is a recent decision. We basically said, well, the ALJ didn't do the listing analysis, but you know what, didn't find that there was a disability at all, and it's pretty clear that he wouldn't have found that one of the listed impairments was a disability as well or that it qualified for a listed impairment. Is that how you would interpret that? That's how I think I would read that. I don't think the issue in Bagwell was the listing primarily. I think it was more down the line in the five-step sequential analysis, if I recall correctly. Okay. So the four areas that there needs to be a marked limitation in at least two of those four areas or an extreme limitation in one. This is the area of adaptive functioning, which is the second requirement in 1205B. The four areas are understanding, remembering, and applying information. The ALJ found that Mr. Reinhart has a marked limitation in that domain. So all Mr. Reinhart has to do is to show one more area of marked limitation. Now concentrating, persisting, maintaining pace, moderate, ALJ said. Adapting and managing oneself, again, moderate. Now our contention is that the evidence clearly shows that Mr. Reinhart has serious limitations in interacting with others and in concentration, his ability to concentrate, persist, and maintain pace in a work-like setting. And again, he only needs to show one of those to meet the requirements of Listing 1205B. But it's somewhat unusual to me in this case is the almost understandable absence of objective medical evidence on these issues because of the age and context of what's going on in the world right now. And therefore, what is the commission, what is the legal requirement of that? Because obviously the absence of objective medical evidence defeats more typical disability claims nine times out of ten, if I could say, the ones that come up on appeal. Exactly. If you claim you have a... Whereas here, I mean, Dr. Neba doesn't provide it, but he wasn't really a mental health professional. And I don't know what kind of mental health professional opinions would be that probative of the question of social interaction. He goes down and he has a lot of fun with the haunted house, so he's obviously able to socially interact. You argue he's got a very solitary lifestyle otherwise, it appears, therefore, not to have any social interaction. So what is a mental health professional, what add to that, and where did the ALJ err in the way he or she approached it? Obviously, if you claim to have a broken leg and don't present an x-ray of a broken leg, you don't have objective evidence. But when you get into the mental realm, the objective evidence really comes from these mental health professionals. And Dr. Jones, a psychologist, evaluated Mr. Reinhart on three separate occasions, 2007, 2013, 2016, and every single time he found that Mr. Reinhart has deficits in his adaptive functioning and social skills. Out of context and relying primarily on what he was told by Mr. Reinhart and by Mr. Reinhart's mother, and also by his own assessment of Mr. Reinhart's demeanor in the time he was met with him. He, for example, in both 2013 and 2016 says he presents in a childlike manner. So if you have somebody who is 21, a 21-year-old man or a 24-year-old man on those occasions who is described as childlike, that seems to be a serious limitation in social functioning here. But that doesn't preclude you from being able to work. That's not the standard, Your Honor. The question is whether he has a serious limitation in social functioning is the standard here. And if he has that serious limitation, then he will meet Listing 1205B. Did the ALJ disregard the clear evidence of the limitations? Did it inoculate Mr. Reinhart and Mr. Reinhart? I'm not suggesting the ALJ. Did the ALJ misstate the record in any way by failing to give full impact to the uncontroverted evidence? He stated what Dr. Jones had found in these three different psychological evaluations. He just didn't agree with it. He didn't believe it to be true. Even the state agency doctors who evaluated some of the medical evidence at the time they were considering it said that he can only work at jobs where interpersonal contact is incidental to the work performed. The ALJ said, I don't even accept that. And so, yes, I don't think the ALJ here properly assessed the evidence. According to his mother, he has poor social skills and no actual friendships. What about, in that regard, Judge Loca mentioned the evidence of his being friends with the firefighters? Did the firearms have interaction? Was it a daily basis? Did it happen occasionally or almost never? There's nothing in the record as to the frequency or even the nature of the relationship. He said that his mother was friends with the firefighters and he made friends with them and he helped them out in a Halloween house. The ALJ said it was every year. There's no reason for the ALJ to assume too much. Look, this is good-hearted firemen taking care, showing some interest in a mentally retarded young man. And I don't think that is substantial evidence that he does not have serious limitations in his social functioning, especially in light of all of the professional assessments done by Dr. Jones on three separate occasions. He was in anger management when he was 16 because of his inability to control his anger toward others. Dr. Jones said at that time, his anger and occasional aggressiveness prevent him from being able to make many substantial friendships. What age was that? That was age 16. In 2016, Dr. Jones said socially he has minimal interaction with others and displays a limited ability to read social cues in an age-appropriate manner. He would likely be taken advantage of easily by others and he has poor social discretion. These are assessments done by a professional psychologist. But at age 16? No, this is at age 24 in 2016. People do grow up, they do. But apparently Mr. Reinhart has not because even at age 24, Dr. Jones is describing him as presenting with a child-like manner. So have you had a case where this court has weighed in and reversed the line drawing and he's adapted functioning sub-parts where the ALJ said it was mild and we said no, he gets a 12.05 listing because we think it was serious? No, and mainly because I have done several cases in 1205C, but now it's 1205B. They just changed it in 2017, so we have not litigated. No, neither have I. Well, under 1205C, there was not the differentiation between mild and moderate and serious. But I've been doing these cases rarely but for a long time and these distinctions in the sub-parts of 12.05 listing have existed. I'm sure they've changed and migrated and the ALJ says mild and the argument is no, it was moderate or moderate, no, it was serious. Have you got a case where we've reversed an ALJ for missing the mark by one level? Not one comes to mind. Not one comes to mind. But I think this was the one that should be that case. It's always the first. And then, how would we word such an opinion? In other words, saying this is line drawing but under substantial evidence, there's not substantial evidence to support the ALJ's opinion on this particular point? Yes, exactly. In your view, it would run counter to the objective evidence from the doctors and everybody else that says this person has marked. Would we have to find a marked limitation on that one element of the listing? Yes, Your Honor. I see my time is up. May I answer your question? Judge Loken will permit you and I won't ask any more. Okay, all right. Yes, that's exactly how the court would rule in this case is that the ALJ's determination that Mr. Reinhart does not have a marked limitation in social functioning or in the concentration, persistence, or pace is not supported by substantial evidence on the record as a whole, given the evidence from the psychological evaluators here, given the evidence of his daily activities, given the ALJ's reliance on very thin evidence to the contrary. Thank you, Your Honors. Thank you. Mr. Jenkins. Good morning. Good morning and please support. My name is L.B. Jenkins and I'm here today to represent Nancy Berryhill, the Acting Commissioner of the Social Security Administration. The issue in this case is whether Mr. Reinhart meets the requirements of Listing 1205B. The Commissioner respectfully submits that substantial evidence supports the ALJ's finding that Mr. Reinhart was not disabled in this case. The ALJ essentially did its job in this case, which is to consider all the evidence that's put before him, including Mr. Reinhart's own testimony, and determine whether or not he was disabled under the Social Security Act. And unfortunately, Mr. Reinhart has not established his burden of proving so. In order to establish that he met this listing, Mr. Reinhart had the burden to establish... I didn't study the precedent cited. Did you cite a case where the issue before the circuit court was this 12.05 line drawing? No, I did not. Did you find one? I didn't find one. I just... I mean, I've had the issue presented in prior cases, but I don't recall that it was as determinative to the listing question as it seems to be here. Where he's got the first... he's got the IQ criteria. Right. And he's got the first one of the two he needs in the adaptive functioning criteria. Right. So he's at least approaching third base, if not around it, to take a baseball analogy. And the ALJ says, well, yeah, you even get halfway to home on two of the others, but you just missed. And now the circuit court, of course the district court, found that was not... it was supported. Yes. And the circuit court is saying, no, you ought to draw the line somewhere else. Have you found another circuit court that's had this peculiar or challenging question posed? Right. With mental disabilities, it's... you raised earlier the point, how do you objectively establish things like limitations in social functioning? And the ALJ is required to consider their entire record, not just objective evidence. And in this particular case, Mr. Reinhart's trying to establish that he has marked limitations in social functioning. And he's relying on the opinion of Mr. Jones, the consultative examiner, who did examine Mr. Reinhart on three separate occasions, two of which was before the relevant period. Now, Mr. Reinhart... Dr. Jones, I'm sorry, was able to establish objectively the low IQ scores. They've remained pretty consistent over the years. Who testified at the hearing? Mr. Reinhart testified himself. Did his mother testify also? No, his mother did not testify. And no... was it just Mr. Reinhart and the VE? Yes, sir. As a matter of fact, I'd like to point out that the last CE, which was actually during the relevant period in 2016, Mr. Reinhart actually attended that consultative examination alone. What I'd like to point out is that although Dr. Jones said that he had significant limitations in social functioning, he seemed to be merely relying on Mr. Reinhart's own subjective statements. So, in other words, without a more consistent treatment relationship, Dr. Jones didn't actually get the opportunity to observe these social limitations that Mr. Reinhart's alleging. I'd also like to indicate that during this consultative examination, Dr. Jones noted that Mr. Reinhart was able to sit calmly during the evaluation. He did not squirm in his seat or display any fidgety behavior. He also was cooperative, and he showed occasional distraction, but responded well to redirection. Counsel, I asked opposing counsel about the Bagwell decision, and Bagwell relied on an earlier decision. Is there any relevance to that case here where we had a listed impairment that was being brought up, and then the ALJ didn't do the analysis correctly, and we said, Well, but there was no ultimate disability, so there was no harm, no foul. Right. In this case, the ALJ did conduct a proper analysis. He actually went through each step, and although there was no significant evidence in this case, he did conduct a proper analysis. He looked at the record as a whole. He considered Mr. Reinhart's hearing testimony. He did consider the evidence that was even prior to the relative impairment, including the psychological evaluation of his school psychologist when he was 11 years old at the time. So I take it that you don't think there's much that Bagwell doesn't apply here because of the listed impairment. You don't even get to the harmless point. Yes, sir. I agree. I'd also like to point out that even when Mr. Reinhart was applying for disability, the SSA employee that took the application noted he was pleasant, cooperative, and he readily supplied the requested information to support his application. So in other words, the ALJ actually considered the record as a whole, as I stated, including Mr. Reinhart's own testimony, and ultimately determined that he had only mild limitations in social functioning. I'd also like to go back to his testimony. The hearing lasted approximately 30 minutes, and he did not appear to have any difficulty answering the ALJ's questions. You know, that was my impression when I read the transcript, and I wonder if Mr. Wallace addressed it. It seemed to be quite reasonably articulate. Yes, sir. Yes, sir. And going back to the argument— But there again, we're not—we shouldn't play doctor when I read the transcript. Exactly. Well, again, with social functioning, you can't prove it objectively, but it has to be observed over a period of time. And like we already stated, there's no evidence in this case. There's no treatment records. There's only three consultative examinations, two of which was prior to the relevant period. And even the one consultative examination that was from the relevant period does not give any indication that he has marked limitations in social functioning. What about the ongoing supervision, the fact that he loses concentration easily and kind of wanders? He did have a substantial amount of evidence that came in on his behalf at the hearing about that. Well, again, he doesn't—the ALJ found that he had moderate limitations in concentration, persistence, and pace, not marked. Okay, so—and some of the reasons the ALJ found that was that during Mr. Jones' own consultative examination, he noted that Mr. Reinhart was able to persist and complete numerous tasks during the evaluation. He was able to recall digits and unrelated words correctly. He was able to count backwards and recite his personal information, such as his Social Security number and his address. And Mr. Reinhart even admitted he had no problems with his own personal care. He was able to prepare sandwiches and make microwavable dinners daily. He did his own laundry. And he was able to shop a lot. Could he perform any job in the national economy? Wasn't he fired from the job because he didn't shovel rocks correctly or something like that, which doesn't seem to require a high level of— That's what he stated, but we don't really know why he didn't last longer at that particular job. In this case, even if we get past the Step 3 finding and we agree that the ALJ correctly did the analysis, the ALJ eventually went on to Step 5 and determined that based on the limitations that Mr. Reinhart could establish, he could perform the job of garbage collector and poultry hanger, which are basically isolated jobs. He takes the instructions from the supervisor, and then he goes and does his job. He doesn't have to interact with customers or even other employees. My problem with that second issue is I read the definition of residual functional capacity as found in the ALJ's opinion. If that's all a VE was told in defining his abilities and limitations, it doesn't really capture how close he came to the 1205B listing. In other words, it doesn't really suggest that he doesn't have serious, but he has whatever. In social functioning? Yeah. How can the VE's opinion be reliable if he isn't given in the RFC definition? If the RFC definition does not fairly describe how close he came to the listing, doesn't that cast some doubt on the VE's opinion that the ALJ then relied on in finding he was not disabled at Step 5? When you say the ALJ relied on, could you clarify what you mean, Your Honor? Well, I didn't read the transcript, so I don't know quite how. Usually the ALJ will, if not read to the VE, have already read into the record when the VE testifies the ALJ's finding on residual functioning capacity. Right. And then when the argument is made in the petitions for review, well, the VE didn't consider the limitations. The answer usually is, by your counterparts, yes, but the VE was told what the RFC findings were, and that was all he had to be told. Yes. But is that really true if the finding, if the ALJ has said you just missed on Step 3, and then has RFC findings which don't capture how close he came, doesn't that, does that cast some doubt on the VE's opinion? No. Is there any case law on that? Or just, you know, give me what you think the answer is. Well, again, I think that establishing RFC is not an exact science. Here's the opinion. The claimant retains the mental ability to understand, remember, and carry out simple, routine, repetitive tasks with a specific vocational preparation. He retains the ability to make decisions, judgments, and simple work-related situations. He can respond appropriately. That doesn't say he gets distracted in five minutes, if that was in fact what the record showed. Well, I think that's what... In other words, since the RFCs vary, his limitations that are almost made him listed. Well, the ALJ is only required to include limitations that the claimant is able to establish with evidence. But if the ALJ finds his ability to avoid being distracted is moderate but it isn't serious, doesn't the VE need to know that? Yes, the ALJ is... And if the RFC, then, moving away from the third of the five factors and moving into the fourth and fifth, the ALJ then creates an RFC which is more routine in other cases and completely ignores the fact that this fellow is easily distractible, isn't that a problem for reviewing court? I don't believe so, Your Honor. I think that in this case, particularly with the step three argument, I'm sorry, the ALJ included appropriate limitations that even matched... Did the VE know that? Yes. How did the VE know that? Because the ALJ is required to give a precise hypothetical question to the vocational expert that matches what the RFC is. And the question said he loses his concentration in five minutes or ten minutes, and that was part of the hypothetical? Depending on the ALJ, sometimes it's exactly that precise. See, that's the problem. I'm having the same problem as Judge Loken. If he says that he's got a moderate limitation, that needs to show up in the residual functional capacity, and that passage he read, it doesn't show up. So if the VE is not told that he has a moderate limitation on concentration, but is told something different, then we've got a problem. Again, in this case, he found that he had mild limitations in social functioning. So... I'm fine with it. I'm more talking about the concentration part of it. Okay, so that's why he told the VE that he had a standard preparation, the SVP of one, which is like the lowest score you can get. And so both of these jobs are unskilled jobs, which precisely matches the SVP of one. So in this case, although he didn't give him every specific detail in terms of... In other words, the ALJ doesn't really have to include every little nuance to what his specific limitations are. But that's pretty important. If he can't shovel rocks, right, and let's say garbage collector. Look, I don't know what garbage collector is, what the requirements exactly are. But if he's wandering off to go look at a pretty tree or something like that, I mean, that's a big problem. And if the vocational expert's not told that, it casts some doubt on whether the vocational expert had all the information before him or her. Well, in this case, moderate limitations accommodates that. But if the claimant had that extent of an inability to concentrate, he would have had marked limitations. And in this case, the ALJ did not have sufficient evidence to establish that. So we gave him moderate and found that he could do unskilled work. I see that I'm out of time. I'd like to just say that Mr. Reinhardt did not establish his burden of meeting the Step 3 listing. The ALJ considered all the evidence and crafted an appropriate RFC to accommodate Mr. Reinhardt's proven limitations. And given these limitations, the vocational expert was able to find jobs Mr. Reinhardt could perform. Mr. Reinhardt's argument amounts to a request for this court to reweigh the evidence, which Section 405 of the Social Security Act does not permit. The commissioner therefore respectfully asks that this court affirm the district court's decision. Thank you for your time. Thank you. Well, the case has been thoroughly briefed and well argued. I think we've gotten our hands around the issue and we'll take it under advisement.